IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 8:06CR137 |
| v. | ) | TENTATIVE FINDINGS ON DEFENDANT'S STATEMENT OF UNRESOLVED OBJECTIONS TO RPSR, MOTIONS FOR DEPARTURE AND DEVIATION, AND SENTENCING MEMORANDUM |
| JAMES MCCRACKEN, | ) | |
| Defendant. | ) | |

In "Defendant's Statement of Unresolved Objections to RPSR, Motions for Departure and Deviation, and Sentencing Memorandum" (hereafter Defendant's Statement) the defendant is said to intend "to admit the allegations of both pending Amended Petitions (document number 33 and document number 60), and wishes to proceed to disposition on both Amended Petitions at the time of sentencing on October 2, 2006."

**Objections to Sentencing Guideline Determinations on Career Offender Status**

The defendant's first objection to the RPSR is, "Objections to Sentencing Guideline Determinations on Career Offender Status." He argues that "the two relevant prior convictions (RPSR ¶ ¶ 49, 50) should be deemed 'related' under U.S.S.G. § 4A1.2(a)(2). As related cases, they are not to be counted separately, and the career offender provisions are inapplicable since the defendant does not then have two separate predicate prior convictions. U.S.S.G. § 4B1.2, comment (n.3)." Note 3 of § 4B1.2 refers to paragraph 4A1.2 which says at note 3 headed "*Related Cases*" that:

> *Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme*

> *or plan, or (C) were consolidated for trial or sentencing. The court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that under represents the seriousness of the defendant's criminal history and the danger that he presents to the public. For example, if a defendant was convicted of a number of serious non-violent offenses committed on different occasions, and the resulting sentences were treated as related because the cases were consolidated for sentencing, the assignment of a single set of points may not adequately reflect the seriousness of the defendant's criminal history or the frequency with which he has committed crimes. In such circumstances, an upward departure may be warranted. Where prior related sentences result from convictions of crimes of violence, § 4A1.1(f) will apply.*

I think it is clear that in the present case the two robberies referred to in this objection, those in 1988 appearing in paragraphs 49 and 50 of the RPSR, were clearly "consolidated for trial or sentencing." The defendant was sentenced by me for both on the same day, each receiving a sentence of 20 years, to be served concurrently. I do not think they were "part of a single common scheme or plan." One of the bank robberies occurred in Oregon on March 28, 1988, netting $3,484 by intimidation with a gun and the Nebraska robbery of FirsTier Bank in Lincoln occurred on April 6, 1988, nine days after the Oregon robbery. The defendant's version, as contained in the PSI of 1988 on page 6, says in the last two sentences, "While here in Nebraska, Mr. McCracken decided to go back to Tennessee. The defendant then decided to rob the bank to obtain money to return home." In the Prosecutor's Version, at the end of paragraph 17, appears this: "At approximately 1:30 p.m. he was arrested at Greyhound Bus Depot in Lincoln, Nebraska, after purchasing a ticket to Portland, Oregon." It was also noted that before he left Oregon "McCracken also robbed the Benjamin Franklin Savings & Loan, Stark Street Branch, Portland, Oregon, on March 14, 1988," telling the teller he had a gun, though it was not displayed. He was not prosecuted for that act. The probation officer in the 1988 worksheets of her Presentence Investigation Report categorizes the defendant at Criminal History Category VI and says:

> The defendant is a career offender because 1) he was at least 18 yrs. old at the time of the instant offense 2) the crime was one of violence 3) he has two felony convictions of a crime of violence (Burglary of a dwelling is considered a crime of violence 4.12).

The RPSR of 2006 describes at least one such burglary in paragraphs 46 and 47. Paragraph 46 describes a stealing of personal property and firearms "from the residences of Mike Boyle and Dr. William Burford." A sentence of incarceration of two-to-six years was imposed. Paragraph 47 says that for a burglary of 8/3/82 his sentence was 5-to-15 years, consecutive to the sentence of the offense in paragraph 46 and parole was revoked on 4/26/88. The explanation includes, "the defendant also robbed a man at gunpoint in the man's house in Greene County, Tennessee. The defendant held a .32 caliber gun at the victim's head and took the man's billfold, $40 and other sundry items valued at $200." That seems to described a crime of violence. Application Note 1 of § 4B1.2 of the November 1, 2005, U.S.S.G. Manual says that "crime of violence" includes " . . . robbery . . . and burglary of a dwelling."

　　I tentatively find that the robberies at paragraphs 49 and 50 of the RPSR are not related and assigning a single set of points would not adequately reflect the seriousness of the defendant's criminal history or the frequency with which he has committed crimes. Even if they were considered related, an upward departure would be warranted. Additionally, the robberies at paragraphs 49 and 50, together with the burglary shown at paragraph 46 and possibly the one shown in paragraph 47, are ample to satisfy the requirement of § 4B1.1 regarding the category of Career Offender.

### **Objections by Defendant's Counsel to Paragraphs 42, 44, 47 and 48**

　　As to the objection to paragraphs 42, 44, 47, and 48, the probation officer has responded that the information in paragraphs 42 and 44 were derived from the Presentence Investigation Report dated August 11, 1988, completed by U.S. Probation

Officer Ruth Bailey. The probation officer also notes that the objection does not have an impact on the determination of criminal history points. I agree that that is true, as far as I can tell. The objection tentatively is overruled.

As to paragraph 47, the probation officer's response is that that information was derived from the Presentence Investigation Report dated August 11, 1988, completed by U.S. Probation Officer Ruth Bailey. I tentatively find that the information contained in the Presentence Investigation Report of August 11, 1988, is information which is accurate in the absence of contrary evidence. The probation officer's response in the present case says that the objection does not have an impact on the determination of criminal history points, but I am not at all sure that that is true. The episode mentioned in paragraph 47 may constitute a crime of violence. If there is additional information about that burglary conviction and the parole revocation, it may need to be presented.

Paragraph 48 is objected to on the basis that the convictions at paragraph 48 is duplicative to information in paragraph 46. It appears that those two paragraphs involve the same burglary, but paragraph 48 simply adds some further information, that on 11/17/87 the defendant was paroled. That part is not duplicative.

### Issues of Restitution
### Currency in law enforcement custody from April 20, 2006, robbery.

The position of the defendant is that the amount in law enforcement custody from the April 20, 2006, robbery should not be included in the court's restitution order, citing 18 U.S.C. § 3663A(b)(1). My tentative conclusion is that an order of restitution needs to be made including the amount held by law enforcement. The amount in law enforcement custody should be applied to reduce the defendant's obligation when it is paid to the court. The amount of the restitution should be determined by the amount of the loss in each of the two robberies of the U.S. Bank in Omaha on or about March 17, 2006, and on or about April 20, 2006. Because there is an objection to the amount of loss, some

evidence will be needed in determining it.

## Practical Ramifications Within the Bureau of Prisons

It is true that the manner and timing of restitution is at the court's discretion. 18 U.S.C. § 3664(f)(2). The defendant asks that the judgment and commitment "expressly provide that installment payments commence only upon his release from the Bureau of Prisons. . . ." He says he makes the request because "he will otherwise be subject to administrative sanctions within the Bureau of Prisons that will only needlessly hamper any quality of life and not advance any serious restitution or similar interest of justice."

The request is made in the light of the Program Statement No. P5380.08 dated 8/15/2005.

In reading that Program Statement I am less pessimistic about the program's consequences to Mr. McCracken than the Defendant's Statement reflects. The general purpose of the program is to develop a financial plan to meet the defendant's obligations within his ability to meet it. A Unit Team at initial classification reviews the inmate's financial obligations and develops a plan. Priorities for payment are special assessments and court ordered restitution at the top, and then other obligations follow. Nothing suggests that an inmate will be destitute as a result of compliance with such a plan, and nothing suggests that this court has better information about what the plan should consist of than does the Unit Team in cooperation with the inmate.

I tentatively find that the request shall not be granted.

## Issues of Advisory Application of the Guidelines and Motions to Depart and Deviate

In the Defendant's Statement he moves for departure under U.S.S.G. § 5K2.0 and for deviation under 18 U.S.C. § 3553(a). He argues that "all of the enumerated § 3553(a) factors favor a sentence of no more than 77 months imprisonment as to his new

-5-

sentencing." (Defendant's Statement pp. 8-9).

One feature he mentions is that "Defendant's offense conduct leaves no doubt that he meant no physical harm to any bank personnel. The Defendant did not, in fact, possess any object actually capable of inflicting harm." (Defendant's Statement, p. 9). I have no information that would sustain that statement. As to the March 17, 2006, robbery, paragraph 10 of the RPSR says, "He showed the teller an item strapped to his waist which he suggested was a bomb." I do not know what that item was in fact and there is no evidence that whatever it was was not "actually capable of inflicting harm." As to the April 20 robbery, the Defendant's Statement says that "he did not possess any explosive whatsoever." That may be true, but I have no evidence to support it. Paragraph 12 of the RPSR says only that "McCracken . . . advised the teller he had a bomb." I cannot say that with respect to either of the March and April robberies in Omaha he intended no physical harm. Nothing supports the idea that he did intend physical harm, but what his intention was if the teller had not acted as he demanded is not reflected by any evidence.

At pages 9 and 10 of the Defendant's Statement Mr. McCracken's history and characteristics are argued to "demonstrate a steadfast willingness to cooperate with law enforcement against those he believed to be victimizing others" and to demonstrate his "courageous qualities." It is true that he has, at least before the 1988 sentences, been active in cooperating with law enforcement officers to persons believed to have been victimizing others. There is no indication that he has shown such characteristic since that time, but the 1988 sentencing took into account the cooperation he had given.

As for courage, that, too, was a factor affecting his 1988 sentencing. Since then, so far as the evidence shows, his primary courage has been in walking into banks and intimidating tellers. That takes courage and bravado and a willingness to blister the same woman teller with death threats and ruses twice in 34 days. He deserves no accolades for that.

On page 11 of the Defendant's Statement the defendant mentions that the federal bank robbery statute defines no mandatory minimum penalty. That is true. The defendant objects to the assertions of the RPSR that he is not eligible for probation. That objection is overruled, because it is of no value to the defendant.

## Issues Relative to Judicial Recommendations

At page 11 of the Defendant's Statement a declaration is made regarding medical complications of the defendant while incarcerated. I do not know what evidence is being relied upon for those statements and the defendant has not asked for any opportunity to present evidence about his physical condition. In the RPSR at paragraphs 61 and 62 there is mention of physical ailments, including chronic pain in his left shoulder "from an injury that went untreated," and a report of January 10, 2006, of a diagnosis of Hepatitis C, status post-myocardial infraction (sic), seizure disorder and carotid artery disease, and paragraphs 63 through 66 describe mental and emotional health problems. It probably would be a good idea, based upon what information I have, to recommend that his case be referred, as the defendant asks, to the Office of Medical Designation and Transportation for review and designation. The prosecution has not responded to that request, and in the absence of a resistence to it, I shall tentatively say that the recommendation should be made.

## Objections by the Defendant Personally in Addition to Those Made by Counsel

The defendant, personally, objected, according to the Addendum to the Presentence Report, to paragraphs 31, 33, 42, 47, 64, 65, 69, and 74. As to paragraphs 31 and 33 the defendant objects to an adjustment for brandishing a weapon. He evidently does not object to the statement that a dangerous weapon was possessed. Whether it was banished or not should be reviewed for the purpose of deciding whether evidence should be offered on the subject. Tentatively, I find that the adjustment remains the same

whether there was a brandishing or only a possessing.

As to paragraph 42 having to do with a sentence of probation for worthless checks, that statement does not affect the sentencing but, unless some verification of that entry is made, it can be deleted.

As to paragraph 47, the parties should be given the opportunity to offer evidence if they wish to do so.

As to paragraphs 64, 65, 69, and 74, counsel should have an opportunity to present evidence if they choose to do so. The information contained therein is of some importance in deciding whether I shall make a recommendation as to his placement for treatment, as well as determining the restitution issues.

## **Conclusion**

It is apparent that some opportunity needs to be given to counsel from both sides to offer evidence as to some of the issues discussed herein. Shortly after these tentative findings have been read by counsel, I shall plan to talk with them by telephone or in person about their plans regarding an evidentiary hearing.

Dated September 21, 2006.

                                          BY THE COURT

                                        s/ Warren K. Urbom
                                        United States Senior District Judge